The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, let's be seated. We're already in session. We have two more cases to hear today. We will begin with the case of Brown v. Stapleton. We'll hear from the appellant first. Good morning, Your Honors, and may it please the Court. My name is Samuel Weiss. I represent the appellant, Mr. Brown. Mr. Brown was newly incarcerated at Red Onion Maximum Security Prison in Western Virginia when he went to the barbershop. The barbershop, of course, is operated by the prison. It's not a main street of a small town, right? It's like the barber who is working for the prison. Go to the legal issues. Happily. So on due process, Henderson v. Harmon, which came out after the briefing in this case, basically settles the case. So two steps on the due process inquiry. The first is, did he have a property interest in the cash in his trust account? They took $7 from the prison officials, and your question is, to what extent does he have a property interest in it in the first instance? And secondly, did it, in fact, have a defect in the process? Right. And so I think both parties agree that we're calling it $15 for these purposes, $15, because that's what he's alleged in his complaint. And defendants concede that, to them, it doesn't affect any of the legal analysis. So Henderson v. Harmon, as this court had done years earlier in the unpublished opinion, Brooks v. Pate, just said, full stop. You have a property interest in your trust account. So Henderson doesn't address whether there's a de minimis exception, does it? It does not. Although, like several other circuit courts to have addressed the issue, it did make its claim categorical. And I do think a de minimis exception doesn't make a lot of sense in this particular context. Defendants cite some cases regarding de minimis exceptions, which in many contexts, but especially in the prison context, makes sense for things like personal property or fees for certain services and things like that that were relatively small amounts of money. But in a context like this, where the question is, we are punishing you and we are seizing money from your account to punish you. Normally, $15 would be rather de minimis to bring a case up to the full circuit U.S. Court of Appeals. So what is it about this case, this instance, that makes this not de minimis in the context of here? Well, to our client, first of all, he works for a wage, if he's able to work at all, which is its own issue, that is many times lower than anybody outside the context of prison. To purchase goods, unlike the rest of us who can purchase goods from a wide variety of sellers, he can only purchase goods from the commissary. We could shop around with banks. He has to put money in the trust account. And he can only work with the permission of the very defendants who are punishing him here. We can hear all the facts in this, come down to the fact that he's a prisoner. And $7 to a prisoner, from your perspective, is a lot of money, given the amount that he makes per hour, given what he can buy, how long it takes to do it. So you're saying factually, in this particular instance with a prisoner, it's not de minimis? Correct. Okay. What else do you have to add to that? So can I just respond to that?  So from your perspective, we don't really have to answer the question of whether there exists some de minimis exception, so that maybe in a non-prison setting, a claim for a dollar might not create sufficient interest. We can just say here whatever we want to say, whether it's $7 or $15. In the prison setting, that's real money, even if we might not want to say that categorically. And maybe in a prison setting, a dime would not rise above the de minimis exception. But we just don't have to answer that question at all here. I absolutely agree. And then I presume also we are not in a position to answer the question of what process is due here or what test for that process applies, given what we've got. I agree with that. And so that's a dispute in the brief. So this is sort of step two of procedural due process, right? If we have the protected interest, what's the process? And what the Supreme Court did in Wolfe is what defendants in their answering brief encouraged this court to do, which is Wolfe was a couple years after Matthews v. Eldridge. It said go to Matthews v. Eldridge, which, of course, is very flexible and very context-specific, and weigh every single variable and come up with a new test. And that would be a perfectly fair reading of Wolfe, except that for the past 51 years, that's not how the Supreme Court or this court has treated Wolfe. What they've treated Wolfe as is – Can I just pause for a second? Please. This argument was not passed on by the district court? This argument was not passed on by the district court. And so we would be a court of first review, not of review? That's correct, yeah. Okay. And so this court would obviously be justified in just reversing on the single ground. The defendants moved for dismissal on one basis, which is the no property interest, because the Sandin v. Conner testifies. And the district court ruled on one basis, and that is no longer good law in this court. Do you concede the district court properly dismissed Brett Farmer? Yes, I do. And then one final question, and then I'm going to be done. You can ask as many as you like. No, that was a promise to myself, not to you. Do you agree it would be different if the money, for example, was underneath his mattress? I absolutely agree. And that's because it's contraband? Yes, because it's contraband. And even if we were in some sort of idiosyncratic circumstance where cash was not contraband in a correctional facility, it almost certainly is in every context. But because in the context of prison, there's a lot of limitations on liberty, obviously, and there's a lot of limitations on property, obviously. And the concerns with cash in prison mirror those of personal property. And so I think defendants even cite a case that involved a money order that was taken from somebody, and that was held to be de minimis. But you would say a money order in the prison context, that's contraband and therefore no property interest. It's like having a kilo of cocaine here in the courtroom. They can take it from you, and you've got no due process. Right, absolutely, or a bottle of alcohol, or more than a certain number of books, or many other things that would be legal and sort of freely used in any other context, but that create security risks in prison. Money in a trust account does not create the security risks that cash does. The point is you're not asking us to say that for a prisoner, money is a property interest. You're asking us much more narrowly to say that the trust account is a property interest. Absolutely. So can I ask you about the excessive fines clause? Yes, Your Honor. Where in this complaint do you think is the best language that comes closest to actually pleading an excessive fines claim? Specific page, J.A. Yeah, so I would say. You say it wouldn't exist. I would say that given the leniency that this court has instructed to interpret, a first version of a pro se complaint in Shaw v. Foreman, which used language along the lines of, not along the lines of, used the exact language of allegations that possibly could convey an illegal theory. Right, I'm asking you. Right, of course. Allegations in this complaint possibly convey that. Of course. So he said, he alleges, you know, first of all, that he was fined $15 at all. In the prison context, we know that he was indigent. In United States v. Bajikajian, forgive that pronunciation, it lays out factors. One of those is, am I the person who this statute was meant to protect against? He alleges at, this is 46-47, you know, he alleges that he was in the prison barber, you know, he used the language of, you know, I was in the prison barber shop. I did not know this rule. I was instructed by a prison official to take it off. He tells, and this is around 49, he tells the disciplinary officer, you know, I was in the prison barber chair. I didn't know this rule. This rule doesn't seem like it applies in this context when I'm, you know, explicitly instructed by somebody working on behalf of the prison to do something. So. Okay, so I have one other question on that. Yeah. Are you aware of any case that holds the constitutional prohibition on excessive fines even applies to prison disciplinary proceedings? No. And on that, to, you know, be frank, and on that score, there's very little law on the excessive fines clause at all. I mean, this is so unlike what we talked about with Matthews versus Eldridge where there's so much law on procedural due process in prisons and how Wolf applies. This court is writing on a pretty blank slate. And so defendants are saying, well, you know, where's the law to support these claims? And we don't have a lot. You know, we're pointing to a general test. But, of course, defendants don't have law either because these claims just haven't been raised. Let's assume we agree with you on the proper right, even though there's a procedural due process error here, that I think ostensibly would relate to the exclusion of evidence here. We said it in unison that the harmless error review can apply to these cases. So where is it that this excluded error that you claim here, how would it have harmed you? Where did you assert that? Right. So, of course, this is a pro se complaint that needs to be read very liberally. Harmless error unquestionably applies. And in Henderson, what we had is ‑‑ How? Pardon me? That was a good conclusion, harmless error unquestionably provides. The question is how does it provide to this case? Right. So just to analogize to Henderson, because that's an example of when harmless error does apply, Henderson was a case where the incarcerated person conceded that he had done the thing wrong and was just saying the amount of money is wrong, I'm contesting this. And the court was able to look at documents because it was reimbursing medical costs and just said, no, the amount of money is not wrong, so that's harmless. Here, where we have a case, we don't have the exact language of this rule, and, of course, it's inherent in a due process violation that we don't know exactly, he doesn't know, Mr. Brown doesn't know exactly what testimony he could have elicited, but he very diligently pursued his opportunities to try to put on testimony from witnesses, and if it's the defendant's contention that if, for example, the barber had testified and said I shave 100 guys a day and nobody's ever gotten fined before, nobody's ever told me I shouldn't be doing this. Wait, why would that even matter? I mean, if you drive home today and you get pulled over for going three miles over the speed limit, it's not a defense to say nobody's ever been pulled over for going three miles over the speed limit. Well, that's true, but I think— This is a harmless point. So what? He got hammered for a violation that everybody thinks is a little laughable, but it's still a violation, and that doesn't make it a due process problem. I would say it's actually unclear if it's a violation. We don't have a regulation, and we just have a memo, which he never saw, and I think if there was testimony, you know, prisons have hundreds of rules. They're violated often, and some of those violations are really dangerous, and some of those are perfectly innocuous, and the disciplinary hearing— Who is this burden on? The burden is on defendants. And not on the plaintiff to show that the exclusive evidence would cause harm? So it's a whole question of whether or not this is an affirmative defense or whether or not it is a matter that is a pleading requirement. I don't think it's a pleading requirement, but I think it's the burden on the defendants to say, we violated your due process rights, but it wouldn't have made a difference anyway, and I think you need a clear circumstance like Henderson. You violated, and here's the harm. Well, I think he's shown the harm. He's shown. You're not alleged it. You're not put it forth anywhere. I think he has shown the harm. I think we don't— But what is it? Go back to Judge Wynn's question. What is the harm? I mean, par for intuition. All right, so 99 people didn't get cited for this. I don't see why that's a harm. If that evidence came in, that has no effect on the outcome. So help me understand what it would be that would matter? Your Honor, so I don't actually think that's right in the sense that disciplinary officers are not sort of a mechanical algorithm. They are exercising judgment about whether people have violated a rule and then what the proper punishment is. And so the idea— That's true of the highway patrolman, right? It's absolutely true of the highway patrolman. And so if he violated the memo, it doesn't matter. You can't say, well, I didn't read the sign, right? So yeah, it's true. Nobody gets pulled over for going two miles over the speed limit, but if you did and you got fined for it, you couldn't come in here and call every 99 people that were driving in front of you and didn't get pulled over for going 37 and 35? I mean, I think there are some differences just in the sense of he didn't choose not to read the sign. He was not provided with the information. And again, we don't know the exact language and whether it would be a fair reading. But I think in harmless error, what we're doing is we're actually saying, as an empirical matter, would it have affected the decision maker? And so here, again, there's a lot that we don't know because this was dismissed on incorrect rounds. Let's hear from you on rebuttal when you come back. You've got some time coming back up here. I'll try to address that. Judge Richardson, thank you. All right, you may proceed. May it please the Court. I'm Graham Bryant, Deputy Solicitor General of Virginia. On behalf of the defendant and prison officials, with me at counsel table is Assistant Solicitor General Meredith Baker. Brown received a minor fine after notice and a hearing during which he admitted to violating a prison regulation designed to prevent the spread of the COVID-19 pandemic in the early days of that pandemic in the prison environment. The minor punishment fent the offense, and it did not offend the Constitution. That all sounds like an argument he got the process he was due, not that he wasn't deprived of property. So even if he was entitled to process under the situation alleged here, he would have received all the process that he was due. But that's not the basis the district court ruled in your favor, is it? It's not, and the court need not go that far because even this court's recognition in the Henderson against Harmon case that all prisoners have a property interest in their trust accounts doesn't affect the sort of de minimis interest affected here. That case obviously involved over $5,000 of restitution, 180 days of good time being revoked, the sorts of serious offenses that no one would question were not de minimis. So do we look at de minimis in the context of where it is? I mean, you know the facts of this case. I mean, $7 doesn't mean much to most of the folks in this court right now, but $7 could mean a lot to a person in prison who makes, what, a few pennies an hour, $0.27 an hour, or has to pay $1.50 to make a phone call and takes so many hours to even make it. I mean, they would really need to go there in terms of whether this is de minimis in that context. There are cases in other circuits that have addressed this very situation here. So, you know, it's one thing we could all just, if we just said $7 or $15, that's de minimis. I would agree with that. But in a prison context, don't we have to consider that in determining whether that's de minimis? Certainly. In the prison context, the Supreme Court has, across its procedural due process jurisprudence, said you look at what happens in a prison and not what happens in the outside world. But even here, the $7 fine out of a maximum of $15 that was imposed— What does that mean? I don't understand what that means. You look what happens there and not in the outside world? So you're saying, yes, we look at the prison. I think in this situation, you have to look at the prison. In Sandin, the court did say you look at the prison environment. For the de minimis exception, though, even if a procedural due process protection does exist, the court then goes on to look at whether it's de minimis. And here, the imposition, even in the context of the prison environment—  The Constitution says property. It doesn't say property as long as a court concludes the amount of property is more than de minimis. Now, let me just posit. I think the fact this is a teeny tiny amount of money could make a gigantic difference in assessing how much process is due, but I don't understand how it goes to whether you have a property interest at all. So even if there is a property interest that is recognized, Judge Heitens, this court, for instance, in the Garrity case, has said that even if there is one recognized, you then look to whether that interest is de minimis. We've said that in a property case? Or we've said that in Sandin about liberty cases? So in Sandin, that is about liberty, but specifically in the Garrity v. Jordan case, that was a property case. It was not in the prison context. It was a property interest found in continued employment. Could you refresh my recollection? What is the site of that case? Yes, that's Garrity v. Jordan, 830 F. 2nd at 1299. It's a 1997 case. And there, the court found that it was not a de minimis imposition. But that still shows, even if there is an interest, the court looks to whether it's de minimis before turning to what procedures would be appropriate. Are there other contexts where we apply a de minimis exception to constitutional provisions? I totally take Judge Heitens' point, that when we ask what process is due, the nature of your interest has to have a significant influence. And so if we're going to take $5,000 from a prisoner, the type of process that is due could obviously look quite different than the $7 we've got here. But what other contexts do we lawfully and reasonably sort of say, the government's only sort of violated their constitutional rights, so it doesn't matter? The de minimis exception is well established, certainly under the Hewitt lines of property cases, and then liberty and property cases like Sandin. Sandin then says, whether it's atypical… So the liberty cases seem to me like fundamentally different. But I'm actually asking broadly, like outside of the due process context. Are there other constitutional areas where we say, as long as the government just violates your rights a little bit, it's okay? Certainly not necessarily… Like in a de minimis context? In those words, and I'm not aware of a specific de minimis rule elsewhere in the Constitution, certainly none that would come into place here. But there are… Can I give you the hypo then that really troubles me? Because if there is a de minimis exception… So you started by telling me, and I have no reason to doubt it, that in this case the guy got a hearing, in this case he could present evidence, and in this case… But if there is truly a de minimis exception, this means the amount of process due constitutionally is zero, correct? It would be. Okay, so that means that if $5 to a prisoner was de minimis, the prisoner could wake up one morning thinking he has $100 in his account, be told he now has $95 in his account, and he could say, what happened to that $5? And the prison could say, shut up. I don't have to tell you. I took it because I wanted to. If that's not property, they can do that, right? That would absolutely not be the case, Your Honor. Why not? So he wouldn't be able to say that the prison could just do this for whatever. It would not offend the Constitution, but there are ample other provisions… So as a matter of the due process clause, they could just say, shut up, we took it. Under the Supreme Court's jurisprudence, yes. Doesn't that seem deeply – doesn't any line of thinking that suggests you can terminate someone's ownership of money and respond, shut up, I can do what I want, can't possibly be what the due process clause means. And, of course, there's going to be a reason for any type of taking of money. But the Constitution would say you don't. The whole point – Judge Richardson mentioned other contexts. It's analogous under the Fourth Amendment. If you say something's not a search, the Fourth Amendment doesn't care about it. And under the due process clause, if it's not property, the due process clause doesn't care about it at all. And not every case would be a constitutional case, yet the prisoner would still absolutely… I don't know what you would say to that. It's like, yeah, that's the way prison works, right? That if you keep money under your mattress, they can just take it, and you get no process. Exactly. There are a variety of contexts that, yeah, you just get no process. I thought you would just say, yes, that's unfortunate. We hope that doesn't happen. We try to hire and train good guards. But, yes, that would be really bad, but it wouldn't violate the Constitution. Just like the money under the mattress or the extra package of ramen noodles that they weren't entitled to. Yes, in those cases with contraband, that's absolutely the case. Well, Mr. Henry, I'm sorry. Can I – I'm not talking about contraband. I'm talking about a prison account that he's lawfully allowed to own, and he just wakes up one morning and is told there's $5 fewer. Your view is they can do that. It's not contraband in my hypo. Under the established precedent we have under the property portions of the Constitution, that would be true. But absolutely the prisoner would have other remedies. I mean the Virginia Tort Claims Act, in that case where there's no justification whatsoever, would allow tort actions against the government. What is the largest fine that you know of that a court of appeals has ever set as de minimis? I'm not talking about district court cases. I'm talking about courts of appeals. I would point the court to the Northern v. Nelson case in the Ninth Circuit where that was, in 2024 money, an $8 fine was held to be – deprivation of newspapers worth about $8 in current money would be worth – was de minimis in that case. And was the deprivation – was that – were those newspapers contraband? I believe so, Your Honor. Okay. What's the largest amount where someone has seized something that isn't contraband and a court of appeals has said it's de minimis? And, of course, there are very few of these de minimis cases that make it up to a published federal appellate precedent. But Judge Easterbrook in the Seventh Circuit in the Abdul Wadood case found a $0.50 fine at that time to be de minimis. And that was similar to what we had here where it was the lowest level of prison offense in the prison system where the only possible punishments were a reprimand, a small fine, loss of privileges. And, of course, the Constitutional – What about the Reynolds v. Wagner case in the Third Circuit? And that's true. There are several of the cases here – How much was in that case? I don't recall off the top of my head, Your Honor. About $3 or so. Yes. The Third Circuit said that inmates have a property interest in that amount. Yes. What about the Burns case? Agreed. Many circuits have found that there is a property interest. Well, I was just dealing with it in the context of Judge Hyde's question. You went on the upper end. I'm saying go to the lower end. What is the lowest amount that a court has considered to be de minimis? The question really is going at is when is it no longer de minimis in your view, in the government's view? When is it – Certainly in this – You're saying 7 or 15 is de minimis. When will – won't it be de minimis? There's no need for this court to draw the line in this case. But I think a helpful reference is the fact that the Virginia Department of Corrections gives every prisoner upon discharge $25 freely if they don't have that in their account. And so in the Virginia context, I think $25 is a helpful benchmark to refer to. This court need not reach the complex constitutional questions here if it doesn't – That makes it not de minimis, the fact that Virginia gives you $25. And if it costs you $30 to get a candy bar, that wouldn't be de minimis? That would be de minimis? This is all drawing lines and looking at different amounts. I'm only using an example. You gave that $25. I did. Giving some money would make it de minimis. I mean $25 would for $15 makes that de minimis. I would say that would just be helpful reference. If the state freely gives you that amount of money in the prison context, that would help consider drawing lines. But there's no need to draw those lines here for two reasons. First, qualified immunity applies and keeps us from having to look into any – Did you ever say the words qualified immunity in the district court? We did not, but – Don't our cases say that if you never say the words qualified immunity in the district court, you don't get to say them for the first time on appeal? Crucially, in Sayles and Suarez, in those cases, the defendants were the appellants and had the burden on appeal. The answer is yes. But why don't you go to the elephant in the room in your case, and that's the harmless error review here. Exactly, Your Honor. That would be the second – Is that an affirmative defense or is that something that has to be pled? Who bears the burden? Harmless error is not an affirmative defense. That's something that is part of every analysis that the court makes in a constitutional context. And here, as in the Harmon case – So in your view, it's a pleading requirement. Yes. And I note that on the reply brief here on appeal even, my friends on the other side did not contest any part of our harmless error analysis in the briefing before this court. Here, at no point – Let me understand that just for a second. You think it's a pleading requirement in essence because it's like, in effect, pleading an injury? That if you can't show that the process denial mattered, then there's no injury from the denial of process. So it's almost like a standing requirement. Precisely, Judge Richardson. For any injury to exist, for there to be a harm, the court has to – or excuse me, the petitioner would have to look at what the prejudice is. And here, in nowhere in none of the pleading does Mr. Brown point to how getting any of the stuff that he alleges that he was denied would have changed anything in his hearing or aided his defense, which is our standard for looking at harmless error cases. So can I – so I had not thought about this before, but it strikes me that this is like a standing inquiry, that in fact this is like a jurisdictional problem. That if he has not alleged an injury – he had a fine, that's true, but he's got to allege that the process, the thing that he has alleged was done wrong, caused an injury. Precisely. Is that a jurisdictional problem that we've got to address? I don't know that the court has treated it as specifically jurisdictional in the precedent, but it's well established that for there to be any sort of harm, there must be prejudice. And at no point in this case has my friend on the other side identified how he was prejudiced by his alleged deprivations. The gravamen of the offense was to – I miss the fact that you are saying they have that burden, but in our criminal cases when we're dealing with a procedural error, isn't it true that we put that burden of harmless error on the government? And this court in its case is looking at what sort of defenses have to be raised and when. Even in, I believe, sales, has said that we don't require every affirmative defense to be pled immediately at every opportunity. And here, there was a single pleading that the prison officials had a chance to file before the case was dismissed. Well, the question is, is it a defense? I mean if I say harmless error, usually the burden is on the party that has alleged the harm. So in this instance here, that did the alleged harm. And in this instance here, usually the burden would be on you to come forth and to indicate that it's harmless error. So if you start with a proposition that's on them, yeah, if they didn't plead it, it's not there. There's a clean-cut way to go. But if you must come forth and indicate, well, there's no harm here. And here, the procedure error, if any, and I think the plaintiff agreed, would be the exclusion of evidence. And the question is, what would these witnesses and these documents and these videos show? And it seems to me, without even pushing you in this direction, but I'm just saying it seems to me because this is a transparent procedure. There's no need – we're not playing games here. It seems to me that that evidence would probably go – I don't know where it's going to go to because the rule says you can't wear a mask, and you only got one exception. And I don't know what a witness is going to do to overcome that one exception. I think that's exactly the case, Your Honor, here. There's simply no evidence anywhere of what – nothing that's been proffered to show what any of the extra processes that he asks to receive would have done to aid his defense. It follows that even if there was any sort of deprivation at this hearing, that deprivation would have been harmless. It would not have affected the outcome in any way. Of course, it's hard when you're coming on appeal and it says you didn't let us have witnesses. That's sort of – normally, I mean, if it's not pro se, you would want them to proffer what the witness would say or to indicate what the documents may be known was there. But in terms of how it could help or not, we don't know, I mean, what these witnesses would say. At least, I don't think the record issues it. It certainly does not show it here. It simply says that I requested these forms, and he alleges that he was denied the forms that would be used to get the sorts of evidence and witnesses that he was asking for. At no point does he suggest what they would have said or how they would have helped him. And just to a point that my friend mentioned in his opening argument, that he was a recent transfer and had no notice of this rule and was blindsided by it. Mr. Brown was transferred from Nottoway Correctional Center to the facility where he was at, Red Onion. This rule was one that was promulgated to all of the inmate population of the Virginia Department of Corrections, so he would have had notice at his previous facility. You'd only need to read the Gaston v. Taylor case to indicate the ignorance of the rule of the prison is not going to be an offense. Exactly, Judge Wendt. You're going with it. You don't need to go there. It's more just as a factual matter. It's very unlikely he truly was unaware of it, even as alleged. In my brief remaining time, I'd like to touch upon the excessive fines claim, primarily the claim that seems to have only been raised here on appeal. There's nowhere in any of the pleadings below that the pro se litigant, even viewing the complaint liberally and construing it in the way this court has said we must construe pro se pleadings, nothing in the pleadings set forth an excessive fines claim. Nothing in those cases or nothing in the pleadings suggests that he's challenging the amount of the fine, that it was excessive, that it was unduly burdensome on him. Indeed, he actually wrote in a letter that's in the record to the correction officials saying that this case is not about the $7, emphasizing that he was talking about the procedure but not challenging the amount of the fine. Should we be liberal about that? Yes. Even viewing it liberally, though, this court has always looked for some sort of textual hook. For instance, in Slade, the court found that there was no takings claim alleged in the pro se pleading, and it specifically noted the words property, taking, just compensation. None of those trigger words were there. Likewise here, there are no words that would suggest there's an excessive fines claim pleaded here, and certainly there's no precedent that would show that the excessive fines clause even applies in this context. At bottom, this case is about someone who violated a minor prison rule and received a minor fine. The punishment fit the offense. He received all the process that he was due with his notice and hearing, and in any event, any denial was harmless error. I ask that this court affirm the district court's ruling. All right. Thank you very much. Mr. Swartz, you have a few minutes. I'm sorry, Mr. Weiss. I'm going back to the previous case. It's okay. I don't mind. You have much easier names to pronounce in the second case. Thank you. Thank you, Your Honor. So just to jump right to harmless error, I'd say there's a few different points. So at JA-48, what he alleges is that— Who's the burden on it? It might be ambiguous, and it might be, in fact, on us, and I don't think that it matters. But it seems like you have to do something. I mean, maybe not say it's not harmless, but at least if you want to have witnesses, documents, and videos, it should be more than I just want some evidence in. You ought to see something the evidence is going to show to help you in your defense, and the charge here is your client was not wearing a mask during the time he should, and there's one exception. So how is it going to help to have these witnesses deal with that exception? I think in a few different ways. So first, I would say at JA-48, what he alleges, and this is a brief prose complaint, but he says the hearing officer disregarded that there was a conflict between my testimony and the offense report, which is to say what he alleged was that I told my version of events, and then there was the offense report from the officer Branham, and the hearing officer believed Branham. So what other witnesses could do is they could testify and say Brown's version of events is true. What was Brown's version of events? Did he say he was wearing the mask? He said that he was wearing the mask. No, no, no, he didn't say that he was wearing the mask. Sorry, I misheard. No, he didn't say that he was wearing the mask. It doesn't spell out exactly what that discrepancy is, but just that there was some testimonial discrepancy that the hearing officer credited the officer report and not him. But I don't understand that. I mean you said he's not wearing the mask. There's one exception. So what is a witness going to do to testify regarding that one exception? The exception being that an officer told him he could take it off. That doesn't exist here. So how are you going to get there? Right. I think to zoom out a tiny bit on the context of this, I believe it is defendant's position. I don't want to mischaracterize it, but if they're saying that this is a strict liability rule, then if he had had a seizure and the mask had fallen down, he'd be guilty. And any testimony about the fact that he had a seizure, tough, minor offense, minor punishment. If another prisoner had. If you're going too fast for a good reason. Did you say the witnesses say he had a seizure? No, of course not. What did the witnesses say? I mean that would be an extraordinary situation, but not the only thing the witnesses are saying outside of. Your Honor, I think that this is genuinely an extraordinary situation. He goes to a prison. The prison takes people who do not follow grooming standards. It is obligated to shave. They have a grooming violators unit in their supermax prison. They take people who refuse to shave and put them in solitary confinement. The prison operates a barbershop. It is inherent. It employs somebody to shave people. And then, so if he had not shaved, he could be fined. You seem to suggest in that situation you easily fix that. You're getting ready to be shaved. I'm sure there's a prison staff person in there. They're not letting prisoners shave in a place with a razor without another officer. You turn in an officer and you say, Officer, I need to take my mask off and be shaved. Is that probably what usually happens? The allegations are that the prison disciplinary officers. Not the disciplinary officers, sorry. The prison staff watched this happen. And it's inherent. If a prison is going to operate a barbershop and punish people for having a beard and also punish people for going to the barbershop that they are operating, we're into sort of a Kafkaesque place here. And the idea that if testimony had come out about what exactly, and what I mentioned, the seizure, not because that's what happened, but because there has to be some kind of mens rea requirement. I see where you're going. You're saying he's getting ready to be shaved. The officer's sitting there looking at him and he sees the mask on the officer. He's sort of implicitly or whatever, he's kind of Kafkaesque. That's what you're going with. Right. And to perhaps offer the fundamental point, why is the prison operating a barbershop that provides shaves if it is in fact a violation of prison rules to have those shaves? You cannot shave with a mask on. Might just need a goatee, though. That's a constitutional violation of a different type, I think. We got you a point. Okay, thank you so much. All right, counsel, we're going to come down, and great counsel would proceed to our final case of the day.
judges: James Andrew Wynn, Julius N. Richardson, Toby J. Heytens